FILED

2016 Jan-22  PM 06:58
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **AURORA LOAN SERVICES, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **CARTHENIA W. JEFFERSON** ) | |
| ) | |
| **Defendant/Counter-Plaintiff** ) | |
| ) | |
| **v.** ) | **Case No. 2:16-cv-00078-TMP** |
| ) | |
| **FEDERAL NATIONAL** ) | |
| **MORTGAGE ASSOCIATION,** ) | |
| **SIROTE & PERMUTT, PC,** ) | |
| **NATIONSTAR MORTGAGE, LLC,** ) | |
| **QBE FIRST INSURANCE AGENCY,** ) | |
| **INC., BALBOA INSURANCE** ) | |
| **COMPANY, and QBE AMERICA,** ) | |
| **INC.,** ) | |
| ) | |
| **Counter-Defendants.** ) | |

## NATIONSTAR'S MOTION TO SET ASIDE ORDER SUBSTITUTING NATIONSTAR AS A PARTY AND MOTION TO STRIKE OR DISMISS JEFFERSON'S AMENDED COUNTERCLAIM

Defendant Nationstar Mortgage LLC ("Nationstar") respectfully moves this Court for an order (1) setting aside or striking the State Court's November 12, 2015 Order permitting Carthenia W. Jefferson ("Jefferson") to add "Nationstar Insurance" as a substitute party in this case, (2) dismissing or striking the Amended Counterclaim in its entirety for failure to comply with Rule 15 and the State

1421170.1

Court's November 12, 2015 Order, and/or (3) dismissing certain claims  against

Nationstar pursuant to Rule 12(b)(6).  In support, Nationstar states as follows:

## **INTRODUCTION**

This case began in 2011 with Aurora Loan Services, LLC's ("Aurora")

complaint to set aside a 2010 foreclosure and reinstate a mortgage, and Jefferson's

2012 counterclaim related to that same foreclosure and servicing of the

corresponding mortgage.   Despite the fact that the original plaintiff/counter

defendant (Aurora) is no longer in the case, the original complaint has been

resolved, and there has been more than four years of litigation, discovery,

depositions, and dispositive motions (culminating in a State Court record of over

3,100 pages), in December 2015 the case morphed into an insurance dispute

between Jefferson and a host of new "counter defendants."  Specifically, less than

three weeks after settling her counterclaim against Aurora and more than four

years after this lawsuit began, Jefferson filed an "amended counterclaim"

("Amended Counterclaim")[1] adding Nationstar and three other brand new "counter

defendants", asserting six new causes of action, and attempting to substitute

---

[1] Nationstar will refer to Jefferson's Counterclaim and Amended Counterclaim throughout this brief as "counterclaims"' however, in affect the Amended Counterclaim is actually an Amended Complaint, because the original complaint has been dismissed and the original plaintiff is no longer in this case.  Indeed, Nationstar and the other new defendants are not proper counter-claim defendants because (1) there is no original complaint remaining and (2) they have not made any claims against Jefferson.  Consistent with the Notice of Removal (Doc. 1) and Motion to Realign the Parties (Doc. 10), Jefferson should be the plaintiff, and Nationstar and the other "counter-defendants" should merely be defendants.

Nationstar for Aurora—effectively putting Nationstar on the hook for <u>the very</u> <u>same claims</u> she had just settled with Aurora.  Simply put, Jefferson is seeking a "second bite at the apple," and also the chance to bring new, unrelated claims against Nationstar and other new defendants into a very old dispute. This Court should dismiss Jefferson's Amended Counterclaim—which is procedurally insufficient and substantively unmerited—and allow the original lawsuit to proceed to trial as scheduled in March 2016.

## <u>FACTS AND PROCEDURAL HISTORY</u>

**The Complaint.** Over four years ago, Aurora filed a suit in Jefferson County Circuit Court ("State Court"), asking the State Court to set aside a May 11, 2010 foreclosure on Jefferson's home (the "Subject Property") and reinstate the original mortgage. (<u>See</u> Doc. 1-1, pp. 3-45.)

2. **Jefferson's Answer.** On May 11, 2012, Jefferson answered the Complaint and asserted counterclaims against Aurora, Federal National Mortgage Association ("FNMA"), and Sirote & Permutt, PC ("Sirote") alleging violations of the FDCPA and asserting 14 state law claims (the "Counterclaim"). (<u>See</u> Doc. 1-1, pp. 51-65.)

3. **Sirote is Dismissed.** On August 13, 2012, the State Court entered an Order dismissing the Counterclaim against Sirote. (<u>See</u> Doc. 1-2, p. 65.)

4. **Original Complaint Resolved, Foreclosure Set Aside, Mortgage Reinstated.** On December 12, 2012, on joint motion from Aurora, Jefferson, and FNMA, the State Court entered a Consent Order, setting aside the May 11, 2010 foreclosure and reinstating the original mortgage. This Consent Order disposed of Aurora's original Complaint, and left only Jefferson's claims against Aurora and FNMA. (See Doc. 1-2, pp. 116-117.)

6. **Discovery on the Counterclaims Proceeds and Closes.** From September 2012 – May 2015, Jefferson, Aurora, and FNMA engaged in significant discovery (including written discovery and depositions) and dispositive motion practice. (See Doc. 1, Exh. A.[2])  Discovery closed on May 15, 2015. (See Doc. 1-7, pp. 378-379.) After five continuances, the case is currently set for trial on March 21, 2016. (See Doc. 1-8, p. 536.)

7. **Jefferson and Aurora Settle Their Dispute.** Sometime in November 2015, Jefferson settled her claims against Aurora (see Doc. 1-8, p. 535) and on November 23, 2015, the State Court entered an Order dismissing "All claims and counterclaims between Aurora Loan Services, LLC, and Carthenia W. Jefferson . . . with prejudice" (see Doc. 1-9, p. 453), thereby dismissing original plaintiff/counter-claim defendant Aurora from this suit entirely.

---

[2] Docs. 53, 57, 59, 71, 79, 94, 96, 98, 100, 102, 104, 106, 108, 110, 112, 114, 116, 119, 122, 125, 128, 131, 134, 137, 140, 143, 152, 160, 164, 166, 169, 245-47, 249-50, 260, 298, 300, 324-327.

8.     **Jefferson Files Amended Counterclaim, Adding New Defendants, New Facts, and New Causes of Action.** After Aurora was dismissed, on December 11, 2015—purportedly on the heels of a November 12 Order in which the Court granted Jefferson "leave to amend the complaint . . . to add Nationstar Insurance as a substitute party"[3]—Jefferson filed an "amended counterclaim" adding new "counter defendants" Nationstar, QBE First Insurance Agency, Inc. ("QBE First"), QBE Americas, Inc. ("QBE Americas"), and Balboa Insurance Company ("Balboa") (collectively, the "New Defendants"). Jefferson also asserted brand new factual allegations and causes of action pertaining to an insurance dispute arising from Jefferson's March and April 2013 insurance claims and out of allegedly improper credit reporting between September 2014 and September 2015. (See id.; see also, Doc. 1-12, pp. 2-43.).[4]

9.     **Removal.** The case was removed to this Court on January 15, 2016. (See. Doc. 1.)

## ARGUMENT AND CITATION TO AUTHORITY

### A. Nationstar is not a proper substitute party under Fed. R. Civ. P. 25.

---

[3] The State Court's substitution order was a part of a larger order pertaining to a May 2014 motion for summary judgment filed by FNMA, and did not come as a result of a prior motion or briefing by the parties on substitution. Indeed, Jefferson never moved in writing for substitution of the parties, and neither Nationstar nor any of the other defendants in this case had a chance to respond to any such request by Jefferson, prior to the November 12 Order.

[4] Both the insurance dispute and the credit reporting allegations occurred well after the original Counterclaim was filed in May 2012 and the original lawsuit was resolved in December 2012.

i.   <u>Nationstar was not served with Jefferson's Motion to Substitute in accordance with Fed. R. Civ. P. 25(c), 25(a)(3), and 4.</u>

As an initial matter, a party being substituted for another must be served in accordance with Rule 4. Specifically, "[a] motion to substitute, together with a notice of hearing, must be served . . .on nonparties as provided in Rule 4."  Fed. R. Civ. P. 25(c).  Here, is appears that Jefferson <u>orally</u> moved the State Court to substitute Nationstar for Aurora during a November 12, 2015 summary judgment hearing, and the Court obliged. (<u>See</u> Doc. 1-8, p. 535-536) ("Leave of Court is granted for [Jefferson] to amend the complaint within 30 days of this Order to add Nationstar Insurance as a substitute party.")  There is no indication that Jefferson filed (much less served) a motion to substitute, or that she provided Nationstar notice of a hearing.[5]  Moreover, there is nothing to suggest that Jefferson tried to serve (or even inform) Nationstar of her intent to seek substitution prior to filing her Amended Counterclaim on December 14, 2015.

As a result, Jefferson failed to comply with Rule 25(c)'s procedural requirements and Nationstar was denied its rightful opportunity to argue that substitution for Aurora was improper. *See Wearing v. Savannah State Univers.*, 132 Fed.Appx. 813 (11th Cir. 2005) (holding that failure to properly serve a party

---

[5] In reality, there was no hearing scheduled on substitution, rather it appears that it just "came up" during the November 12, 2015 summary judgment hearing

under Fed. R. Civ. P. 4 was grounds for dismissal, and that "[a]ctual notice of the lawsuit on the defendants' part does not cure defective service.") (quoting *Schnabel v. Wells*, 922 F.2d 726, 728 (11th Cir.1991)); *Anderson v. Osh Kosh B'Gosh*, 255 Fed.Appx. 345 (11th Cir. 2006) (holding that failure to comply with Fed. R. Civ. P. 4 was grounds for dismissal); *see also Trustees of Chicago Regional Council of Carpenters Pension Fund v. Conforti Const. Co., Inc.*, 2013 WL 3771415, *1-2 (N.D. Ill. 2013) (citations omitted) (holding that even where the moving party had made (failed) attempts to serve the party to be substituted with process under Fed. R. Civ. P. 4, its failure made "the service of process [ ] improper in this case, and [ ] the motion to substitute could be denied on that basis alone.").

Accordingly, Nationstar requests this Court enter an order setting aside or striking the portion of the State Court's November 12, 2015 Order granting Jefferson leave to add Nationstar as a substitute party, and declare that Nationstar has not been properly added as a party.

ii.    <u>All claims against Aurora were dismissed with prejudice prior to Jefferson's December 11, 2015 attempt to substitute Nationstar for Aurora.</u>

The substitution was improper—and should be set aside—for another reason. Black's Law Dictionary defines "substitution" as: "Putting in place of another thing; change of one thing or another . . .". HENRY CAMPBELL BLACK, BLACK'S LAW DICTIONARY, 1282 (Joseph R. Nolan et al. eds., 5th ed. 1979). It

further defines "substitute defendant" as: "One who takes the place of another in the same suit or controversy and <u>not one who is sued upon an entirely different cause of action</u>." *Id.* (citing *McCann v. Bentley Stores Corp.*, 34 F.Supp. 231, 233 (Dist. Mo. 1940) (emphasis added)). The State Court's November 12, 2015 Order stated that Jefferson could "amend the complaint within thirty days to add Nationstar [ ] as a <u>substitute party</u>" on basis that Nationstar was now servicing Jefferson's mortgage instead of Aurora.  (<u>See</u> Doc. 1-8, pp. 535-536.)  As such, the State Court only permitted Jefferson to add Nationstar to this suit to the degree that Nationstar's interest in this suit was interchangeable with Aurora's and did <u>not</u> permit Jefferson to "sue[] upon an entirely different cause of action." BLACK'S LAW DICTIONARY at 1282 (citing *McCann*, 34 F.Supp. at 233).  The substitution is improper for this reason alone.

The substitution also was improper because the party Nationstar was to be substituted for—Aurora—settled the "suit or controversy" with Jefferson on November 23, 2015.  (<u>See</u> Doc. 1-9, p. 453.) ("All claims and counterclaims between Aurora Loan Services, LLC, and Carthenia W. Jefferson are hereby dismissed with prejudice"). Thus, when Nationstar was added to this suit as a "substitute" on December 14, 2015, both the party and all of the claims that Nationstar was to be "substituted" for had been dismissed, leaving no place for Nationstar to be substituted into.  As stated above, the premise of "substitution" is

that Aurora's interests were interchangeable with Nationstar's; therefore, to whatever limited degree that Nationstar could be properly understood as a successor in interest to Aurora's interests in this lawsuit,[6] all of those claims were extinguished on November 23, 2015 when Aurora was dismissed from this lawsuit.

Jefferson's efforts to receive the benefit of a settlement with Aurora and yet still preserve those exact same claims by "substituting" Nationstar into the place of Aurora in this lawsuit violates the basic principle of *res judicata*. The Eleventh Circuit has held that:

> The doctrine of claim preclusion (or *res judicata*) bars the parties to an action from relitigating matters that were or could have been litigated in an earlier suit. The doctrine facilitates "the conclusive resolution of disputes" by reducing "the expense and vexation attending multiple lawsuits, conserv[ing] judicial resources, and foster[ing] reliance on judicial action by minimizing the possibility of inconsistent decisions."

*Shurick v. Boeing Co.*, 623 F.3d 1114, 1116 (11th Cir. 2010) (quoting *Montana v. United States*, 440 U.S. 147, 153–54 (1979)). The *Shurick* Court went on to hold that "a settlement in [ ] litigation precluded the plaintiff's subsequent [ ] claim" (*Id.*

---

[6] Nationstar disputes that it is a successor to Aurora's interest in this suit. Nationstar's only connection to Aurora's interest in this suit is that it began servicing Jefferson's mortgage *after* Aurora; that fact, however, in no way transfers liability to Nationstar for actions committed by Aurora *prior* to the time Nationstar began servicing the loan. Thus, Nationstar would not have been a proper substitute as a successor in interest to Aurora's claims in this lawsuit at any time during the course of this litigation. *American Credit Co. v. Bradford*, 414 So. 2d 119, 121 (Ala. Civ. App. 1982) (citing 7A Wright and Miller, Federal Practice and Procedure, § 1958, p. 663) ("The most significant feature of Rule 25(c) is that it does not require that anything be done after an interest has been transferred. The action may be continued by or against the original party, and the judgment will be binding on his successor in interest even though he is not named.").

at 1117) where those claims arose out of the same causes of action against the same party. As the definition of a "substitute defendant" is: "One who takes the place of another in the same suit or controversy and not one who is sued upon an entirely different cause of action," (BLACK'S LAW DICTIONARY at 1282 (citing *McCann*, 34 F.Supp. at 233)), Jefferson was, by definition, only authorized to sue Nationstar for the same causes of action on the theory that Nationstar was the same party as Aurora. Therefore, the moment that Jefferson settled her claims against Aurora, she also lost her cause of action against Nationstar as a substitute party,[7] and allowing her to proceed against Nationstar as a substitute party would violate *res judicata* by allowing Jefferson a "second bite at the [same] apple." *Shurick*, 623 F.3d. 1118.

**B. To the extent Nationstar has been properly made a party, Jefferson's Amended Counterclaim is untimely, without good cause, not in the interests of justice, and should be stricken.**

    i. <u>Jefferson did not seek leave to amend the Counterclaim, except to add Nationstar as a substitute party.</u>

In the event this Court finds that Nationstar was properly substituted for Aurora as a party in this suit, Jefferson's Amended Counterclaim is still due to be dismissed because the State Court granted Jefferson leave to amend for one limited purpose – to add Nationstar as a substitute party. (See Doc. 1-8, pp. 535-536.) To

---

[7] To the degree that Jefferson's claims are new claims arising out of a different set of facts, the claims are against a new party, not a "substitute party" and, as discussed below exceed the scope of the State Court's November 12, 2015 Order and are due to be dismissed pursuant to Rule 15.

do anything other than add Nationstar as a substitute party required leave of court. Specifically, Ala. R. Civ. P. 15(a) allows a party to amend at any time "more than forty-two (42) days before the first setting of the case for trial"; however, thereafter, a party may only amend upon a showing of "good cause."  Ala. R. Civ. P. 15(a).  This case was first set for trial almost three years ago (April 15, 2013) (See Doc. 1-2, pp.81-84.)  Hence, to amend her counterclaim in December 2015, Jefferson was required to seek leave of court and show "good cause."  Ala. R. Civ. P. 15(a).  The Federal Rules do not make her Amended Counterclaim any more timely.  Specifically, except within 21 days of service of the original pleading, "a party may amend its pleadings only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." *Id.* at 15(a)(2) (emphasis added).  The Amended Counterclaim was filed years after the original Counterclaim, and the record only suggests that Jefferson, during a summary judgment hearing, advised the Court that "Nationstar Insurance is the new FNMA servicing entity" and requested "time to amend the complaint to include Nationstar." (See Doc. 1-8, p. 535.)  Despite this, the December 11, 2015 Amended Counterclaim went far beyond that scope.  (See Doc. 1-12, pp. 2-43.) Because Jefferson did not seek leave to amend her Counterclaim to add new defendants, new legal theories, and new facts, the Amended Counterclaim should be stricken or dismissed.

ii.  <u>Even if Jefferson had sought leave to amend, she should not have
been allowed to do so.</u>

Had Jefferson properly sought leave to amend to add new parties, new facts,
and new claims, Nationstar would have been given the opportunity to argue that
Jefferson cannot show "good cause" or that "justice so requires" amendment.  This
lawsuit was filed in May 2010, the Counterclaim was filed in May 2012—the
Amended Counterclaim was not filed for another three and a half years (December
2015). (<u>See</u> Doc. 1, Exh. A.)  Prior to the addition of Nationstar and the other new
defendants, this case was effectively litigated, with copious discovery, depositions,
and dispositive motions. (<u>See</u> <u>id.</u>) In fact, discovery closed seven months ago and
trial is set for March 2016. (<u>See</u> Doc. 1-7, pp. 378-379; Doc. 1-8, p. 536.)  In
addition, Jefferson's new claims and factual allegations are completely different
from the original counterclaim based on the 2010 foreclosure, and instead involve
an insurance dispute.  Even assuming, *arguendo*, that such claims were related,
Jefferson admits that she has been aware of these potential claims since their
inception in early-2013. (<u>See</u> Doc. 1-9, pp. 497-498.)  Yet, without reason, she
waited for over two years before deciding to assert these new, unrelated claims.
(<u>See</u> id.)  It appears that the Amended Counterclaim likely was spurred by
Jefferson's settlement with Aurora in November 2015, and desire to get a second
"bite at the apple" through Nationstar. When the Court granted her leave to amend
for that limited purpose, she took the bull by the horns as an opportunity add

unrelated insurance allegations, new defendants, and new causes of actions, without court approval to do so.

In *Paschal v. Florida Public Employees Relations Comm'n*, 666 F.2d 1381 (11th Cir. 1982), the Eleventh Circuit held that the district court did not abuse its discretion in denying leave to amend a complaint in a case what was over <u>one</u> year old, where discovery had ended, the case was set for trial, and no there was no excuse for the delay in amending.  *See also* *ABC Asphalt, Inc. v. Credit Alliance Corp.*, 56 F.3d 1384 (5th Cir. 1995) (holding that there was no error where trial court denied motion to amend complaint as untimely because "[The motion] was filed almost twenty-one months after the discovery cutoff, eight months after entry of the joint pretrial order, and less than three months before the trial date (which had been reset at the request of the parties)).

Here, this case is over <u>four</u> years old, discovery has ended, the case was set for trial in March 2016 (after having been continued 5 times), and Jefferson has offered no good excuse for the delay in bringing her new counterclaims.[8]  In addition, allowing Jefferson to amend at this stage would greatly prejudice the New Defendants, who have not had a chance to participate in over four years of discovery and who do not have any interest (or any involvement in) the original

---

[8] Moreover, since these are new claims, related to events different from the 2010 foreclosure and Aurora's loan servicing, Jefferson will not be prejudiced if she is not allowed to amend, because she could simply bring the claims in a new lawsuit.

claims/counterclaims at issue related to the 2010 foreclosure. Allowing Jefferson to expand the scope of the 2011 litigation by adding new defendants, new facts, and new claims, will obviously delay trial on the original claims, require the new defendants to get up to speed on more than four years of litigation, and require discovery to effectively begin all over again.[9]

Finally, even in the event that this Court finds that the interests of "justice so require[]" allowing Jefferson to amend her complaint at this stage of litigation, Jefferson vastly exceeded the parameters laid down by the State Court in its November 12, 2015 Order. The November 12 Order only authorized Jefferson to add "Nationstar Insurance" as a substitute party. (Doc. 1-8, pp. 536-536.) Instead, Jefferson added Nationstar Mortgage, LLC and three other new parties, in addition to a host of new causes of action and facts unrelated to the underlying foreclosure dispute. For the Court's convenience, Nationstar refers the Court to Doc. 1-12, which is a comparison of the original Counterclaim and the Amended Counterclaim that demonstrates how truly outside the scope of the Court's Order Jefferson went with her Amended Counterclaim.[10]   As this Court has explained, "disregard[ ] [for] Rule 15 by exceeding the scope of the court's [ ] order" is

---

[9] On the other hand, to move forward <u>without</u> reopening discovery would prejudice Nationstar and all newly added defendants immeasurably.

[10] The Amended Counterclaim text is depicted by blue font (with any deletions from the original Counterclaim being set forth in red font). Any text included in both the Amended Counterclaim and original Counterclaim is set forth in black font.

grounds for striking the amended complaint. *Tuscumbia City School Sys. v. Pharmacia Corp.*, 2013 WL 3242854, *6 (N.D. Ala. 2013). There can be little doubt that adding four new parties, a dozen new claims, and facts alleging two additional causes of action exceeds the scope of the State Court's order permitting Jefferson "to amend the complaint . . . to add Nationstar Insurance as a substitute party." (See Doc. 1-8, pp. 535-536.)

Because Jefferson has exceeded the scope of the Court's November 12, 2015 Order, has not sought leave to amend the Counterclaim, and (even if she had) cannot show "good cause" or that it would be in the "interests of justice" to allow her to amend, the Amended Counterclaim should be stricken or dismissed.

## C. Several of Jefferson's claims against Nationstar are due to be dismissed as a matter of law pursuant to Rule 12(b)(6).

If Nationstar somehow is deemed to be a proper substitute for Aurora <u>and</u> the Court determines that the Amended Counterclaim is proper, portions of the Amended Counterclaim against Nationstar are still due to be dismissed for failure to state a claim. The only facts in the Amended Counterclaim alleged against Nationstar concern insurance proceeds and/or repairs to the Subject Property that Jefferson claims Nationstar and the other New Defendants wrongfully withheld. (See Doc. 1-9, pp. 496-497, ¶¶ 27-34.) The remaining factual allegations in the Amended Counterclaim are largely carried over from Jefferson's May 2012 Counterclaim against FNMA, Sirote, and Aurora, which arose from the May 2010

foreclosure on the Subject Property.[11] As Jefferson states in the Amended Counterclaim, Nationstar did not even begin servicing the mortgage until sometime in late-2012 or early-2013. (Id. at ¶¶ 27-28.)  Thus, Nationstar was not servicing the loan at the time of the foreclosure (May 2010) or even at the time Jefferson filed the original Counterclaim (May 2012). Accordingly, in addition to the other reasons set forth herein, all of Jefferson's causes of action in the Amended Counterclaim against Nationstar that are unrelated to the insurance allegations and are carried over from the original Counterclaim, are due to be dismissed.

     i.    <u>Jefferson's negligence and wantonness claims against Nationstar Counts 1 & 4) are due to be dismissed.</u>

First, Jefferson's negligence and wantonness claims (Counts 1 & 4) are due to be dismissed in their entirety because "Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing." *Deutsche Bank Trust Co. Ams. v. Garst*, 989 F. Supp. 2d 1194, 1205 (N.D. Ala. 2013) (citing *Prickett v. BAC Home Loans & Bank of Am., N.A.*, 946 F. Supp. 2d 1236, 1245 (N.D. Ala. 2013) (collecting cases)); *Costine v. BAC Home Loans*, 946 F. Supp. 2d 1224,

---

[11] Indeed, in comparing the Counterclaim with the Amended Counterclaim, it is clear that the original Counterclaim related only to the foreclosure and servicing related thereto, while the Amended Counterclaim adds facts related to the insurance dispute, and associates (only) those insurance facts with the New Defendants. (See Doc. 1-12, pp. 2-43.)  Tellingly, paragraphs 7-26 of Amended Counterclaim are nearly identical to the original Counterclaim.  Jefferson has already asserted and <u>settled</u> those exact same allegations against prior servicer – Aurora – she cannot assert the exact same claims against current servicer Nationstar. Only one servicer (Aurora) was involved in the foreclosure and could have engaged in the allegedly unlawful conduct asserted in paragraphs 7-26.

1232-33 (N.D. Ala. 2013).  As one Northern District of Alabama judge recently explained: "[A] mortgage servicer's obligations arise from the mortgage and promissory note, not the duty of reasonable care generally owed to members of the public. . . . Therefore, a borrower cannot allege a tort claim based on negligent or wanton servicing of the mortgage." *Beale v. Ocwen Loan Servicing, LLC*, No. 15-00397, 2015 U.S. Dist. LEXIS 78159 (N.D. Ala. June 17, 2015) (citations omitted). In another recent opinion, a plaintiff's similar negligence and wantonness claims against a mortgage servicer and mortgagee were dismissed. The Court explained:

> As defendants correctly point out in their Motion, **a veritable avalanche of recent (and apparently unanimous) federal precedent has found that no cause of action for negligent or wanton servicing of a mortgage account exists under Alabama law**.
> . . .
> **[T]he mortgage servicing obligations at issue here are a creature of contract, not of tort, and stem from the underlying mortgage and promissory note executed by the parties, rather than a duty of reasonable care generally owed to the public. <u>To the extent that the Jameses seek to hold defendants liable on theories of negligent or wanton servicing of their mortgage, Counts V and VI fail to state claims upon which relief can be granted.</u>**

*James v. Nationstar Mortg., LLC*, 2015 U.S. Dist. LEXIS 28762, *22–29 (S.D. Ala. Mar. 9, 2015) (emphases added) (internal citations omitted). In a November 2015 opinion, the Alabama Supreme Court clarified: "With regard to [the wantonness] claim . . . we note that the relationship between the Shepards and the

[defendant] is based upon the mortgage and is therefore a <u>contractual</u> one." *See U.S. Bank, N.A. v. Shepherd*, No. 1140376, at *32 (Ala. Nov. 20, 2015) (emphasis in original). Jefferson's claims are due to be dismissed for another reason. A cause of action for a tort like negligent or wanton servicing of a loan cannot be maintained where the damages are purely economic and no physical injury (or immediate risk of physical injury) is alleged. *See Webb v. Ocwen Loan Servicing, LLC*, No. 11-00732, 2012 WL 5906729, at *7 (S.D. Ala. Nov. 26, 2012); *Wallace v. SunTrust Mortgage, Inc*., 974 F. Supp. 2d 1358, 1370 (S.D. Ala. 2013) ("While Wallace alleges that SunTrust's negligence and wantonness has caused mental anguish, she has failed to assert any facts suggesting that she has suffered physical injury or experienced an immediate risk of physical injury on account of SunTrust's conduct such that it could be liable for the torts of negligence or wantonness [related to mortgage servicing].") (citing cases). Accordingly, Plaintiff's negligence and wantonness claims should be dismissed.

Even if that were not so, the majority of Jefferson's negligence and wantonness claims are due to be dismissed because the only facts regarding Nationstar in the Amended Counterclaim pertain Jefferson's apparent insurance dispute with the New Defendants. (<u>See</u> Doc. 1-9, pp. 496-497, ¶¶ 27-34.)  This makes sense because, according to Jefferson's Amended Counterclaim, Nationstar did not begin servicing the loan until late-2012 or early-2013 – over two years after

the foreclosure and six months after the original Counterclaim was filed.  The remainder of the facts in the Amended Counterclaim (*Id.* ¶¶ 7-26) are effectively carried over from the original Counterclaim, involve the foreclosure, and thus, could not relate to Nationstar.[12]  In Count 1, only the last sentence in paragraph 36 relates to the insurance allegations. (*Id.* ¶ 36.)  Likewise, in Count 4, only the last sentence in paragraph 48 relates to the insurance allegations. (*Id.* ¶ 48.) The rest of paragraphs 36 and 48 are "carried over" from the original Counterclaim, relate to events that occurred before Nationstar took over servicing, do not connect with any factual allegations alleged against Nationstar, and should be dismissed against Nationstar.

As explained above, Counts 1 and 4 are due to be dismissed in their entirety because negligent/wanton mortgage servicing is not a cause of action under Alabama law. But, even in the event the claims were to survive, only the allegations related to insurance should survive against Nationstar.

ii.   Jefferson's unjust enrichment claim (Count 7) is due to be dismissed.

Count 7 claims that Nationstar and FNMA have been unjustly enriched at Jefferson's expense through the foreclosure on her home.  In comparing the original Counterclaim and Amended Counterclaim, it is clear that Jefferson has

---

[12] See, Redlined comparison of original Counterclaim and Amended Counterclaim. (Doc. 1-12, pp. 2-43.)[13] The Amended Counterclaim adds no new facts from those asserted in the original Counterclaim. (See id.).

merely exchanged Aurora's (with whom Jefferson has already settled this exact same claim) name for Nationstar's and FNMA's names. (Doc. 1-12, pp. 2-43.)  In Count 7, Jefferson alleges only that "[t]he actions of the Counter-Defendant in foreclosing on the home of the Counter-Plaintiff in violation of law resulted in Defendant being unjustly enriched by the payment of fees, insurance proceeds, and equity in the home."  (Doc. 1-9, p. 501, ¶ 62) (emphasis added).

As an initial matter, under Alabama law, "no cause of action for unjust enrichment is cognizable where, as here, there is an express contract between the parties. *Selman v. CitiMortgage, Inc.*, No. CIV.A. 12-0441-WS-B, 2013 WL 838193, at *13 (S.D. Ala. Mar. 5, 2013); *See also Prickett*, 946 F. Supp. 2d at 1248 ("It has long been recognized in Alabama that the existence of an express contract generally excludes an implied agreement relative to the same subject matter.") (quoting *Vardaman v. Bd. of Educ.,* 544 So. 2d 962, 965 (Ala. 1989)). Because the mortgage constitutes an express, written contract, Jefferson is barred from asserting a claim for unjust enrichment.  Moreover, Nationstar was not involved in the foreclosure and Jefferson should not get a "second bite at the apple" by recovering from both Aurora and Nationstar for the exact same claim. Accordingly, Count 7 against Nationstar is due to be dismissed.

  iii. <u>Jefferson's first breach of contract claim against Nationstar (Count 9) is due to be dismissed.</u>

Again, in Count 9, Jefferson tries for a second bite at the apple by substituting Nationstar (and FNMA) for Aurora.  However, all of the allegations in Count 9 regard the defendants supposed failure to apply regular monthly mortgage payments and give proper notice in accordance with the mortgage contract, and do not even mention insurance. (*Id.* at pp. 502-502.) Alternatively, in Count 10, Jefferson asserts breach of contract involving the insurance allegations.  Nationstar is not moving to dismiss Count 10. Because none of the facts asserted against Nationstar relate to any of the allegations in Count 9, and were clearly intended to be (now settled) claims against prior servicer Aurora, Count 9 against Nationstar should be dismissed.

    iv.   <u>Jefferson's fraud claim (Count 11) is due to be dismissed.</u>

Jefferson's fraud claim against Nationstar is due to be dismissed because it is insufficiently plead under Fed. R. Civ. P. 9(b). The Alabama Supreme Court has dictated that when fraud is alleged, the pleader "must state the time, the place, the contents or substance of the false representations, the fact misrepresented, and an identification of what has been obtained." *Robinson v. Allstate Ins. Co.*, 399 So. 2d 288, 289-90 (Ala. 1981) (affirming the trial court's dismissal of the plaintiff's fraud claims for failure to plead with particularity).  Simply put, Jefferson's fraud claim fails because it does not provide any detail regarding the alleged misrepresentations, much less state the time, place, contents, or substance of the

alleged false representations, or identify the individual(s) actually alleged to have made false representations. Accordingly, Count 11 is due to be dismissed.Even if Count 11 is not dismissed entirely, all claims except those in paragraph 86 are due to be dismissed as to Nationstar because they are unrelated to the insurance allegations and are merely carried over from the original Counterclaim. (See *id.* at p. 505, ¶ 83.)[13]

      v.    <u>Jefferson's Unfair and Deceptive Trade Practices claim (Count 12) is due to be dismissed.</u>

Jefferson has failed to state a claim for relief for unfair and deceptive trade practices.  Jefferson appears to assert a claim pursuant to Alabama's Deceptive Trade Practices Act ("DTPA") *Ala Code* § 8-19-1, et seq., with respect to the mortgage on the Subject Property.  As an initial matter, as one Northern District of Alabama Judge explained, "a mortgage loan is not a good or service under the Alabama DTPA" and therefore not subject to regulation by the Act. *Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1399 (N.D. Ala. 1997) (dismissing DTPA claim against Fannie Mae and noting that "no court has held that a loan is a good or service under this statute").

Further, even if the Alabama DTPA were applicable to Jefferson's claims in Count 12, Jefferson has nevertheless failed to state a claim because she failed to

---

[13] The Amended Counterclaim adds no new facts from those asserted in the original Counterclaim. (<u>See id.</u>).

comply with the Alabama DTPA's requirements. Specifically, Ala. Code § 8-19-10(e) requires that at least 15 days prior to filing any action under the Act, "a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be communicated to any prospective respondent by placing in the United States mail or otherwise."  Jefferson has provided no information to the Court, counsel, or the parties suggesting that she has complied with this section of the DTPA.

Finally, even if Jefferson has met these requirements, only paragraphs 90-92 should survive against Nationstar because they are the only paragraphs in the Count that relate to the insurance dispute.

     vi.   <u>Jefferson's Breach of Covenant of Good Fair and Fair Dealing (Count 13) claim should be dismissed.</u>

Jefferson alleges in the Amended Counterclaim that Nationstar and the other defendants breached an implied covenant of good faith and fair dealing by "misleading [Jefferson] and by making assurances that they would receive a loan modification'" and "fail[ing] to abide by the contract regarding insurance proceeds. . ." (<u>See</u> Doc. 1-9, p. 506-07.)  Although "[e]very contract carries an implied obligation of good faith and fair dealing. . . ., it is clear that the obligation is not actionable <u>unless the breach of that duty can be tied to the performance of a specific term of a contract.</u>"  *Shedd v. Wells Fargo Home Mortg., Inc.*, No. 14-00375, 2014 U.S. Dist. LEXIS 160996 at *8–9 (S.D. Ala. Nov. 17, 2014)

(emphasis added) (citing *Lake Martin/Alabama Power Licensee Assoc. v. Alabama Power Co., Inc*., 601 So. 2d 942, 945 (Ala. 1992)).  Indeed, "Alabama courts have recognized the duty of good faith and fair dealing [only] when <u>the contract fails to specify all the duties and obligations intended to be assumed.</u>'" *Shedd*, 2014 U.S. Dist. LEXIS 160996 at *8–9 (citing *Lloyd Noland Found*., 837 So. 2d 253, 267 (Ala. 2002) (emphasis added)).  Here, Jefferson has not alleged a specific provision of the mortgage and/or insurance contract applicable to her claim for breach of the duty of good faith and fair dealing nor has she plead that any such term(s) fail to specify the duties and obligations intended to be assumed. Instead, she alleges in the most general terms possible that such a duty was breached. (See Doc. 1-9, p. 507, ¶¶ 94-96.)  Accordingly, Count 13 is due to be dismissed. *See Shedd*,  2014 U.S. Dist. LEXIS 160996 at *8–9 (dismissing claim, holding that "failure to properly apply payments would be a violation of a specific contractual term, not a violation of a duty of good faith and fair dealing").

Even if Jefferson could state a claim for breach of the duty of good faith and fair dealing, paragraph 94, in which Jefferson claims that "Defendants committed fraud and misrepresentation against Plaintiffs by misleading them and by making assurances that they would receive a loan modification" is due to be dismissed as to Nationstar because the only factual allegations in the Amended Counterclaim

alleged against Nationstar relate to the insurance proceeds, and do not pertain to a supposed loan modification.

> ### vii.   Counts 14 (TILA) and 15 (FDCPA) are due to be dismissed because the claims do not relate to the factual allegations against Nationstar.

Jefferson's only claims against Nationstar involve insurance proceeds and/or repairs. (See Doc. 1-9, pp. 496-497, ¶¶ 27-34.) Yet, in Count 14, Jefferson vaguely asserts that all "Defendants" violated the Truth in Lending Act ("TILA")  because they failed to provide proper notices and disclosures pertaining to the mortgage, charged unauthorized fees under the mortgage contract, have been improperly amortizing the loan, and have engaged in other unlawful conduct with regards to the mortgage contract. (See Doc. 1-9, pp. 508-509, ¶¶ 102-106.)  Accordingly, because the TILA claim has nothing to do with the insurance dispute alleged against Nationstar in Jefferson's Amended Counterclaim, it is due to be dismissed.

Although Jefferson's FDCPA claim (Count 15) is replete of *any* indication of which facts support her FDCPA claims, the FDCPA was established to "eliminate abusive debt collection practices" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged" – and does not pertain to (or encompass) insurance disputes. *See* 15 U.S.C. 1692(e). Because Jefferson only alleges facts against Nationstar regarding insurance, and no claims regarding improper debt collection, her FDCPA claims must necessarily fail.

**D. In the event any of Jefferson's claims against Nationstar survive, Jefferson should be required to replead the Amended Complaint.**

If the Court (1) denies Nationstar's motion to set aside/strike the state court Order substituting Nationstar,[14] (2) denies Nationstar's motion to dismiss/strike the amended counterclaim pursuant to Rule 15, and (3) denies Nationstar's motion to dismiss the amended counterclaim pursuant to Rule 12(b)(6), Nationstar respectfully moves this Court, pursuant to Fed. R. Civ. P. 12(e), for an order requiring Jefferson to replead the Amended Counterclaim.

"When confronted with a shotgun pleading, the court is supposed to order repleading for a more definite statement." *Lane v. Bank of America, N.A.*, No. 2:15-cv-02148-RDP, Doc. 8, at *2 (N.D. Ala. Dec. 2, 2015); *see also Cox v. Asset Acceptance LLC*, No. 2:15-cv-00266-WMA, Doc. 9, at *1 (N.D. Ala. May 5, 2015). The Amended Counterclaim is typical of "[t]he most common type" of shotgun pleadings—that is, "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1322 (11th Cir. 2015). Moreover, in addition to "commit[ing] the mortal sin of re-alleging all preceding counts," the Amended Counterclaim also "is guilty of the

---

[14] Or in the event the Court grants the motion, but allows the case to continue against Nationstar as a defendant (or counter-defendant).

venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.*

In particular, the Amended Counterclaim contains sixteen counts, and not a single one identifies which factual allegations support which claims.  In addition, Counts 11, 12, 13, 14, and 16 contain "absolutely no differentiation between the [d]efendants" and Counts 1, 4, 7, 9, and 10 are against multiple defendants, but do not differentiate between the defendants within the body of the counts. *See Lane*, No. 15-02148, Doc. 8, at *2 (noting this as a legitimate basis for repleader).  Thus, it is a perfect example of "shotgun" pleading, in that it is "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Id.* at *1 (quoting *Anderson v. Dist. Bd. of Trustees of Cent. Florida Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996) (citation omitted)). As the Eleventh Circuit has advised, "a defendant faced with a complaint such as [Jefferson's] is not expected to frame a responsive pleading." *Id.*

Accordingly, Nationstar "move[s] the district court . . . for a more definite statement pursuant to Rule 12(e) on the ground that the complaint provides [it] with insufficient notice to enable [it] to file an answer." *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126-27 (11th Cir. 2014).

## CONCLUSION

At the end of the day, Jefferson is seeking to (1) substitute Nationstar for the same claims she has settled with Aurora and (2) go beyond a Court Order, ignore the procedural requirements of Rule 15, and add new defendants and claims that are unrelated to the four year old litigation.  Although Jefferson has done her best to "muddy the waters" through her pleadings, the simple fact is that Nationstar is not a proper substitute party and the Amended Counterclaim is due to be dismissed. Accordingly, Nationstar requests this Court dismiss it from this case as a substitute party and dismiss the Amended Counterclaim in its entirety.

Respectfully submitted this the 22nd day of January, 2016.

/s/ Ginny Willcox Leavens
Attorney for Defendant Nationstar
Mortgage, LLC

**OF COUNSEL:**
Gregory C. Cook
Ginny Willcox Leavens
Balch & Bingham LLP
1901 Sixth Avenue North, Suite 1500
Birmingham, AL 35203-4642
Telephone: (205) 251-8100
E-mail:  gcook@balch.com
        gwillcox@balch.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 22nd day of January, 2016, I have caused a true and exact copy of the above and foregoing to be served on counsel of the record by electronic filing and/or by U.S. First Class Mail, postage prepaid to the

following:

Kenneth James Lay
Hood & Lay, LLC
1117 22nd Street, South
Birmingham, AL 35205
*Attorney for Plaintiff*

Amanda M. Beckett
Bret Chaness
RUBIN LUBLIN, LLC
428 North Lamar Blvd., Suite 107
Oxford, MS 38655
*Attorney for Federal National Mortgage Association*

Kevin A. Rogers
Wells Marble & Hurst, PLLC
200 Concourse, Suite 200
Ridgeland, MS 39157
*Attorney for QBE First Insurance Agency, Inc.,*
*Balboa Insurance Company, and QBE Americas, Inc.*

*Ginny Willcox Leavens*    `
Of Counsel